COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

MICHAEL RAY JENNINGS

MEMORANDUM OPINION[*] BY
v.      Record No. 1625-15-1                    JUDGE ROBERT P. FRANK
OCTOBER 18, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Michael Ray Jennings, appellant, was convicted in a bench trial of unlawful entry upon

the property of another, in violation of Code § 18.2-121. On appeal, he contends the evidence

was insufficient to prove he intended to interfere with the rights of the occupant to use such

property free from interference. For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

"On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom." Wells v. Commonwealth, 65

Va. App. 722, 725, 781 S.E.2d 362, 364 (2016) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence proved that, in February of

2015, Shakeida Goode lived with her four daughters, the youngest of whom was fathered by

appellant. Nearly eleven months earlier, in April of 2014, appellant had moved out of Goode's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

home. Around January 31, 2015, Goode met appellant at a motel and told appellant their relationship was over. Appellant physically assaulted Goode, and she told him not to come near her or her children.

On the evening of February 1, 2015, Goode's two youngest daughters, eleven and nine years old, went to sleep in the bunk beds they shared. Goode's other two daughters were not in the house that evening.

Goode fell asleep in the den with the television on. All of the lights in the house were off. At 3:20 a.m., she awoke to a "loud bang." Fearful that a child had fallen out of the bunk beds, Goode got up and went to the girls' bedroom to check on them. She found them both asleep.

As she turned to leave, Goode was confronted by appellant standing behind her in the girls' bedroom. Goode had not invited appellant to her home, and had not given him permission to be there. Goode asked appellant why he was there and how he had gained entry to the house. He responded, "I just wanted to hug my daughter for the last time."

Appellant stepped toward Goode's youngest daughter, but Goode remained between them and told appellant, "No, get out of my house."

As appellant exited the home, he "snatched [Goode's] phone off [its] charger," and stated, "Give me this," as he ran toward the front door. Goode "wrestled" with appellant in an effort to retrieve her phone, and pursued him into her front yard. However, appellant escaped with Goode's phone. As he left the scene, he screamed obscenities at Goode and threatened to kill her mother and father.

When Goode returned inside her house, she noticed her bedroom window was open and the air conditioner previously placed in the window was on the floor. Fearful that appellant intended to hurt her when he entered her bedroom, Goode and her children moved to a different

location.  She testified that neither she nor her children felt safe there anymore.  Specifically, she stated that her children "could not sleep there anymore," noting that they "were scared" and "did not know what [the defendant] was going to do to [Goode]."

Appellant was arrested and convicted of violating Code § 18.2-121.  This appeal followed.

ANALYSIS

Appellant contends there was insufficient evidence to prove he entered Goode's property with the intent to damage her property or in any manner to interfere with her rights.

Code § 18.2-121 states in pertinent part:

> It shall be unlawful for any person to enter the . . . dwelling . . . of another for the purpose of damaging such property[1] or any of the contents thereof or in any manner to interfere with the rights of the owner, user or the occupant thereof to use such property free from interference.

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  Wood v. Commonwealth, 57 Va. App. 286, 296, 701 S.E.2d 810, 815 (2010) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)).  "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the fact finder at the trial."  Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998).

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case.  The state of mind [or criminal intent] of an

---

[1] The Commonwealth does not contend that appellant entered Goode's house with the intent to damage her property.

alleged offender may be shown by his acts and conduct." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). "The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven." Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 674 (1995). "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." Viney v. Commonwealth, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005).

"When an unlawful entry is made into a dwelling of another, the presumption is that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances," Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citing Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971)), including those before, during, and after the break-in, Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984); see also Robertson v. Commonwealth, 31 Va. App. 814, 822, 525 S.E.2d 640, 644 (2000).

Here, the evidence reveals that appellant unlawfully entered Goode's unlit home at 3:20 a.m. by forcing the air conditioner out of the bedroom window. At the time he entered the house, appellant knew that Goode had terminated their relationship and had banned him from the house. It is reasonable to infer he knew that the children and Goode would be asleep and any invasion would be frightening and disruptive to the quiet enjoyment of her property.

Goode testified that appellant had physically assaulted her when she terminated their relationship and that she was afraid of him. After appellant broke into the house, Goode and her children immediately moved to another location because they did not feel safe. As this Court has held, "the privacy interest in one's home has few equals." Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005); see also Martin v. Moore, 263 Va. 640, 648, 561 S.E.2d 672, 677 (2002) (In discussing the use of land in the context of nuisance jurisprudence, the Court

- 4 -

stated, "Freedom from discomfort and annoyance while using land, which involves an element of personal tastes and sensibilities, is often as important to an individual as freedom from physical interruption in the use of the land.").

Appellant's sole argument on appeal is that his stated reason to Goode for entering the house was his desire to hug his daughter and that the trial court erred in not accepting his hypothesis of innocence.

> Properly understood, the reasonable-hypothesis principle is not a discrete rule unto itself. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." [Commonwealth v.] Hudson, 265 Va. [505,] 513, 578 S.E.2d [781,] 785 [(2003)]. Thus, the principle "does not add to the burden of proof placed upon the Commonwealth in a criminal case." Id. It merely echoes "the standard applicable to every criminal case." Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983); see also Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003) (*per curiam*) (adopting the opinion of the Court of Appeals).

Vasquez v. Commonwealth, 291 Va. 232, 249-50, 781 S.E.2d 920, 930 (2016).

> "'Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.'" Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (quoting Archer v. Commonwealth, 26 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004) (holding that where the factfinder has rejected the hypothesis of innocence, "that determination cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion").

Wood, 57 Va. App. at 306, 701 S.E.2d at 819-20.

Goode had the right to enjoy the serenity of her home. A rational fact finder could conclude that appellant, who was estranged from Goode and who had recently assaulted her, would be aware that his late-night, surreptitious invasion into Goode's unlit home would cause Goode and her children to be fearful and would interfere with her privacy and peaceful

enjoyment of her home.[2]  Taking into account the history of the relationship between appellant and Goode, as well as appellant's threatening actions following his entry, the evidence was sufficient for a reasonable fact finder to conclude that, at the time appellant entered Goode's home, he did so with the intent to interfere with her right to enjoy her home free from interference.

Accordingly, the evidence was competent, credible, and sufficient to prove appellant's guilt beyond a reasonable doubt.

<u>Affirmed.</u>

---

[2] In fact, appellant's actions rendered Goode's home uninhabitable.